IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARTIN B. JENSEN,<br>TDCJ NO. 698669,<br><br>           Plaintiff,<br><br>v.<br><br>RICK THALER, Director, Texas<br>Department of Criminal Justice,<br>Correctional Institutions<br>Division; BETTY WILLIAMS,<br>Ellis Unit Physician, State<br>Classification Committee, Texas<br>Department of Criminal Justice,<br>Correctional Institutions<br>Division; and UNIVERSITY of<br>TEXAS MEDICAL BRANCH AT<br>GALVESTON,<br><br>           Defendants. | § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. H-13-2390 |

## MEMORANDUM OPINION AND ORDER

Martin B. Jensen, a former prisoner at the Ellis Unit of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), filed a Prisoner Civil Rights Complaint ("Complaint") (Docket Entry No. 3) under 42 U.S.C. § 1983 alleging that he was denied adequate medical care by TDCJ-CID Director Rick Thaler, Ellis Unit Physician Dr. Betty Williams, and The University of Texas Medical Branch at Galveston ("UTMB"). UTMB and Director Thaler have filed Defendants UTMB and Thaler's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) and Brief in Support ("Motion to Dismiss") (Docket Entry No. 20). For the

reasons explained below, UTMB and Director Thaler's motion will be granted.

## I.  **Procedural History**

Jensen is a former inmate of TDCJ-CID who is currently on medical parole for a life sentence.[1]  After filing his Complaint in the United States District Court for the Northern District of Texas, his case was transferred to this court pursuant to 28 U.S.C. § 1406(a).[2]  The court ordered Jensen "to submit a more definite statement of the facts involved in this action" so that the court can properly evaluate the merits of the case.[3]  In compliance, Jensen filed Plaintiff's More Definite Statement ("More Definite Statement").[4]  UTMB and Director Thaler responded by filing their pending Motion to Dismiss.[5]  Jensen responded to the Motion to Dismiss with Plaintiff's Motion for Continuance to Answer States [sic] Counsel for Motion to Dismiss Against Divisions Which Are Defendants in the Above Cause Number ("Motion for Continuance"), requesting an additional thirty days to file his answer because of medical hardship.[6]

---

[1] Complaint, Docket Entry No. 3, p. 8.

[2] Transfer Order, Docket Entry No. 9, pp. 2-3.

[3] Order for More Definite Statement, Docket Entry No. 12, p. 1.

[4] More Definite Statement, Docket Entry No. 13.

[5] Motion to Dismiss, Docket Entry No. 20.

[6] Motion for Continuance, Docket Entry No. 24, pp. 1-2.

## II.  **Jensen's Claims**

Jensen alleges that his Eighth and Fourteenth Amendment rights were violated while he was in the custody of TDCJ-CID.[7]  His allegations are summarized in the following narrative:

Jensen suffers from a bone infection known as osteomyelitis ("condition").[8]  Jensen's condition was discovered in his left knee around January 28, 2011,[9] and he received two operations on that knee early in the year to remove the infection.[10]  After his treatment, Jensen was assigned to the Ellis Unit of TDCJ during July of 2011.[11]  He alleges that he complained of back and rib pain similar to the pain he experienced in his knee; the Ellis Unit Physician, Dr. Betty Williams, ordered x-rays to be taken.[12]  Jensen further alleges that Dr. Williams ignored the radiologist's recommendations based on the x-rays and that his condition began to worsen.[13]

After filing a medical grievance in October of 2011 that was found to have merit, Jensen was taken to the UTMB orthopedic

---

[7]Complaint, Docket Entry No. 3, p. 1.

[8]More Definite Statement, Docket Entry No. 13, p. 13.

[9]Id. at 14.

[10]Id. at 4.

[11]Complaint, Docket Entry No. 3, p. 4.

[12]Id. at 4-5.

[13]Id. at 5.

department for further evaluation.[14]   He was told by UTMB on
October 13, 2011, that he would later receive a bone scan and an
appointment with the infectious disease clinic.[15]   Jensen saw
Dr. Williams again on October 21, 2011; he alleges that she ignored
the UTMB evaluation and gave him a prescription for Motrin, a
medication to which he is allergic.[16]

The next day, October 22, 2011, Jensen alleges that he lost
all feeling in and control of his legs.[17]   Since that day was on a
weekend, Jensen alleges that the superintendent called Dr. Williams
at home.[18]   He alleges that the superintendent told him that
Dr. Williams believed that he was faking his symptoms and had him
placed in solitary confinement without any medical aid until
October 24, 2011.[19]   When Dr. Williams returned to the prison on
October 24, she diagnosed Jensen with a spinal cord compression and
called for emergency medical services.[20]   Jensen was taken to the
Conroe Medical Center where neurosurgery was performed on his
spinal column; he later learned that despite the surgery, he would

---

[14]Id.

[15]Id.

[16]Id.; More Definite Statement, Docket Entry No. 13, p. 6.

[17]Complaint, Docket Entry No. 3, p. 6.

[18]Id.

[19]Id.; More Definite Statement, Docket Entry No. 13, p. 7.

[20]Complaint, Docket Entry No. 3, pp. 6-7; More Definite
Statement, Docket Entry No. 13, p. 8.

remain a paraplegic and face a risk of death if the infection returned.[21]

After his surgery Jensen was housed in the Estelle Unit's Regional Medical Facility until he was given medical parole on March 23, 2012, and transferred to a long-term care facility.[22] Since that time Jensen alleges he has undergone multiple medical procedures in connection with his condition and paralysis that have caused him substantial pain and suffering including reoccurring infection, blood flow treatment, cystoscopy, urodynamic studies, and catheter discomfort.[23]  He also alleges mental anguish as a result of his current physical state and the care he requires.[24] Accordingly, Jensen requests compensatory and punitive damages for his injuries.[25]

Jensen alleges that Director Thaler violated his civil rights by failing to monitor the grievance, safety, medical, and classification systems of TDCJ-CID from July 12, 2011, to October 24, 2011, while his condition deteriorated.[26]  He alleges that Dr. Williams was deliberately indifferent to his medical needs

---

[21]Complaint, Docket Entry No. 3, p. 7; More Definite Statement, Docket Entry No. 13, p. 15.

[22]Complaint, Docket Entry No. 3, pp. 7-8.

[23]More Definite Statement, Docket Entry No. 13, pp. 9-11.

[24]More Definite Statement, Docket Entry No. 13, p. 11.

[25]Complaint, Docket Entry No. 3, p. 14.

[26]More Definite Statement, Docket Entry No. 13, p. 4.

during the same period.[27]  Jensen further alleges that UTMB violated his civil rights because it did not immediately treat him on October 13, 2011, after he tested positive for infection.[28]  Jensen seeks compensatory and punitive damages for his injuries.[29]

## III.  **Analysis**

42 U.S.C. § 1983 provides a mechanism for private parties to enforce federally protected statutory or constitutional rights against defendants who act under color of state law.  See Rehberg v. Paulk, 132 S. Ct. 1497, 1501 (2012).  Despite the broad protections it offers, however, § 1983 is not meant to effect a radical departure from ordinary tort law and common-law immunities applicable in tort suits.  Id. at 1502 (internal citations omitted).  Immunities well grounded in history and reason are not eliminated by covert inclusion in the general language of § 1983. Id. (internal quotations and citations omitted).

Federal courts are courts of limited jurisdiction, possessing only power authorized by Constitution and statute.  Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013).  A plaintiff bears the burden of establishing subject-matter jurisdiction.  In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs), 668 F.3d 281, 286 (5th Cir. 2012).  A party may challenge by motion the subject-

---

[27]Id. at 4-8.

[28]Id. at 9.

[29]Complaint, Docket Entry No. 3, p. 14.

matter jurisdiction of the court to entertain a claim.  See Fed. R.
Civ. P. 12(b)(1).   Under Rule 12(b)(1) a claim is properly
dismissed for lack of subject-matter jurisdiction when the court
lacks the statutory or constitutional power to adjudicate the
claim.  In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss.
Plaintiffs), 668 F.3d at 286.  The court has the power to dismiss
a claim for lack of subject-matter jurisdiction on the basis of the
complaint itself, the complaint supplemented by undisputed facts
evidenced in the record, or the complaint supplemented by the
undisputed facts plus the court's resolution of the disputed facts.
Id.  Sovereign immunity is a jurisdictional issue.  Cozzo v.
Tangipahoa Parish Council-President Gov't, 279 F.3d 273, 280 (5th
Cir. 2002).

     A pleading that states a claim for relief must contain a short
and plain statement of the claim showing that the pleader is
entitled to relief.  Fed. R. Civ. P. 8(a)(2).  Failure to state a
claim upon which relief can be granted is a defense that may be
asserted by motion.   Fed. R. Civ. P. 12(b)(6).   A court is
authorized by Rule 12(b)(6) to dismiss a claim on the basis of
dispositive issues of law.  Neitzke v. Williams, 109 S. Ct. 1827,
1832 (1989) (internal citations omitted).  When considering a
motion to dismiss a claim under Rule 12(b)(6), all allegations are
assumed to be true whether or not they are doubtful in fact.  Bell
Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).  Unless
the allegations show that the plaintiff has failed to state a claim

-7-

upon which relief can be granted, the court will not grant a motion to dismiss under Rule 12(b)(6). <u>Spivey v. Robertson</u>, 197 F.3d 772, 774 (5th Cir. 1999) (internal citations omitted). Courts, however, do not accept as true threadbare recitals of the elements of a cause of action supported by statements that are merely conclusory. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). In reviewing a Rule 12(b)(6) motion, the court will not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts. <u>Public Citizen, Inc. v. Bomer</u>, 274 F.3d 212, 216 n.3 (5th Cir. 2001) (internal quotations and citations omitted). Only a complaint that states a plausible claim for relief survives a motion to dismiss. <u>Iqbal</u>, 129 S. Ct. at 1950.

## A.   State Sovereign Immunity

Eleventh Amendment[30] jurisprudence is well-established: Suits in federal court by citizens of a state against their own state or a state agency or department are barred. <u>Richardson v. Southern University</u>, 118 F.3d 450, 452 (5th Cir. 1997). Congress is able to abrogate state sovereign immunity by legislative means, but its intent to abrogate the states' Eleventh Amendment immunity from suit must be unequivocally expressed and the abrogation itself must be pursuant to a valid exercise of power. See <u>Seminole Tribe of</u>

---

[30]The Eleventh Amendment states:  "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

Fla. v. Florida, 116 S. Ct. 1114, 1123 (1996).  Congress has not
waived state sovereign immunity for § 1983 suits.  Lewis v. Univ.
of Tex. Med. Branch at Galveston, 665 F.3d 625, 630 (5th Cir.
2011).  As a result, § 1983 claims for monetary damages against the
state and its officials are barred by the Eleventh Amendment.
Alegria v. Williams, 314 F. App'x 687, 693 (5th Cir. 2009)
(O'Connor, J.).   A state may, however, waive its immunity by
consenting to suit.  Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n,
662 F.3d 336, 340 (5th Cir. 2011) (internal citations omitted).

     Eleventh Amendment immunity extends to any state agency or
other political entity that is the alter ego or arm of the state.
Vogt v. Bd. of Comm'rs of Orleans Levee Dist., 294 F.3d 684, 688-89
(5th Cir. 2002) (internal quotation marks and citations omitted).
To determine whether a person or entity is an arm of the state
entitled to Eleventh Amendment immunity, the court engages in the
following six-factor test:

> (1) whether the state statutes and caselaw view the
> agency as an arm of the state; (2) the source of the
> entity's funding; (3) the entity's degree of local
> autonomy; (4) whether the entity is concerned primarily
> with local, as opposed to statewide, problems;
> (5) whether the entity has the authority to sue and be
> sued in its own name; and (6) whether the entity has the
> right to hold and use property.

Black v. North Panola Sch. Dist., 461 F.3d 584, 596 (5th Cir. 2006)
(internal quotation marks and citations omitted).

     Of these factors, the most significant factor in assessing the
entity's status is whether a judgment against it will be paid with

-9-

state funds.  _United States ex rel. King v. Univ. of Tex. Health Sci. Ctr.-Houston_, 544 F. App'x 490, 496 (5th Cir. 2013), _cert. denied_, 134 S. Ct. 1767 (2014) (internal quotation marks and citations omitted).  The critical question is whether the use of unappropriated funds to pay a damage award would interfere with the fiscal autonomy and political sovereignty of the state.  _Id._ (internal quotation marks and citations omitted).

### 1.  Director Thaler

Claims under § 1983 may be brought against a person in his individual or official capacity.  _Goodman v. Harris County_, 571 F.3d 388, 395 (5th Cir. 2009).  The court will first analyze the liability of Director Thaler in his official capacity as the director of TDCJ-CID.

The Texas Department of Criminal Justice is a state agency. _Cox v. Texas_, 354 F. App'x 901, 902 (5th Cir. 2009) (citing _Harris v. Angelina Cnty., Tex._, 31 F.3d 331, 338 n.7 (5th Cir. 1994)).  A suit against a state official such as Director Thaler in his official capacity is therefore a suit against the state itself. _Morris v. Livingston_, 739 F.3d 740, 745 (5th Cir.), _cert. denied_, 2014 WL 1515174 (internal quotation marks omitted) (quoting _Will v. Mich. Dep't of State Police_, 109 S. Ct. 2304, 2312 (1989)).  A suit against a state official that is in fact a suit against a state is barred regardless of whether it seeks damages or injunctive relief. _Aguilar v. Tex. Dep't of Criminal Justice_, 160 F.3d 1052, 1054 (5th

Cir. 1998) (quoting <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 104 S. Ct. 900, 909 (1984)). Accordingly, Director Thaler's Motion to Dismiss will be granted.

2.  <u>UTMB</u>

Jensen names UTMB as a party in his complaint. UTMB, however, is a state agency that enjoys immunity from suit in federal court. <u>See</u> <u>Lewis</u>, 665 F.3d at 630 (concluding that UTMB is immune from a § 1983 claim because appellant conceded UTMB is a state agency and did not argue that Texas consented to the suit). State court decisions also hold that UTMB is a "governmental unit" of Texas. <u>See</u>, <u>e.g.</u>, <u>Univ. of Tex. Med. Branch v. Qi</u>, 402 S.W.3d 374, 380 (Tex. App.—Houston [14th Dist.] 2013, no pet.); <u>Robinson v. Univ. of Tex. Med. Branch</u>, 171 S.W.3d 365, 368 (Tex. App.—Houston [14th Dist.] 2005, no pet.); <u>Noah v. Univ. of Tex. Med. Branch</u>, 176 S.W.3d 350, 355 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). UTMB receives state funding from Texas's Permanent University Fund, disposes of donations, gifts, grants, and endowments in accordance with state law, and pays claims against it by direct legislative appropriation. <u>See</u> Tex. Const. art. 7, § 11; Tex. Educ. Code Ann. § 95.34; Tex. Civ. Prac. & Rem. Code Ann. § 101.109. Furthermore, UTMB is under the control and management of the Board of Regents of the University of Texas System whose members are appointed by the governor with the advice and consent of the state senate. <u>See</u> Tex. Educ. Code Ann. § 74.001; § 65.11.

-11-

The court concludes that any claim against UTMB is a claim against the state of Texas itself because UTMB is an arm of the state.   As an institution within the University of Texas System, UTMB is a state agency that enjoys the benefit of immunity from suit in federal court.   Texas has not waived its immunity as the principal of UTMB, and UTMB claims immunity on behalf of Texas in the Motion to Dismiss.   Jensen's § 1983 claim against UTMB is barred by Eleventh Amendment sovereign immunity.   Accordingly, UTMB's Motion to Dismiss will be granted.

## B.   Personal Involvement

The court must also analyze the liability of Director Thaler in his individual capacity as director of TDCJ-CID.   Individual capacity suits under § 1983 seek to impose liability upon a government official as an individual.   See Goodman, 571 F.3d at 395.

Personal involvement by a defendant is an essential element of a civil rights cause of action.   Hamilton v. Foti, 372 F. App'x 480, 486 (5th Cir. 2010) (quoting Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983)) (internal quotation marks omitted).   A plaintiff must plead that each government official, through the official's individual actions, has violated the Constitution because vicarious liability is inapplicable to § 1983 suits. Iqbal, 129 S. Ct. at 1948.   A supervisor is not personally liable

-12-

for his subordinate's actions in which he had no involvement. James v. Tex. Collin Cnty., 535 F.3d 365, 373 (5th Cir. 2008). The doors of discovery are not unlocked to a plaintiff armed with nothing more than conclusions. Iqbal, 129 S. Ct. at 1950.

Jensen does not allege that Director Thaler was personally involved in the violation of his civil rights. Although Jensen argues that Director Thaler failed to monitor the effectiveness of TDCJ-CID policies and the failure to monitor caused his injury, his argument is a legal conclusion insufficient to survive a motion to dismiss. See Iqbal, 129 S. Ct. at 1949 (finding that a pleading that offers only "labels and conclusions" and "tenders naked assertions devoid of further factual enhancement" is insufficient to survive a motion to dismiss). Director Thaler is not vicariously liable for the conduct of TDCJ-CID employees. Accordingly, Jensen's claim against Director Thaler in his personal capacity as director of TDCJ-CID does not state a cognizable claim under § 1983 for which relief can be granted.

## IV.  Conclusion and Order

For the reasons explained above, the court **ORDERS** the following:

1. Defendants UTMB and Thaler's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) (Docket Entry No. 20) is **GRANTED**, and plaintiff's claims against Director Rick Thaler and the

-13-

University of Texas Medical Branch at Galveston are **DISMISSED**.

2.    Plaintiff's Motion for Continuance to Answer States Counsel for Motion to Dismiss Against Divisions Which Are Defendants in the Above Cause Number (Docket Entry No. 24) is **DENIED**.

**SIGNED** at Houston, Texas, on this 27th day of June, 2014.

                                 _____
                                          SIM LAKE
                                 UNITED STATES DISTRICT JUDGE