IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARTIN JENSEN,           §
                    §
      Plaintiff,     §
                    §
v.                      §       CIVIL ACTION NO. H-13-02390
                    §
RICK THALER, <u>et al.</u>,     §
                    §
      Defendants.    §

## MEMORANDUM OPINION AND ORDER

Martin Jensen, a former inmate of the Texas Department of Criminal Justice (TDCJ), filed suit against the University of Texas Health Care Branch (UTMB), TDCJ Director Rick Thaler, and TDCJ Physician Betty Williams alleging deliberate indifference to his serious health care needs. The court previously granted the motion to dismiss of Defendants Thaler and UTMB. (Docket Entry No. 25)

Defendant Williams has filed a Motion for Summary Judgment, with supporting evidence, arguing that this action should be dismissed for Jensen's failure to exhaust his TDCJ administrative grievance remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Jensen has not filed a response to the motion. After reviewing the pleadings and evidence, the court has determined that the defendant's motion should be granted.

## I. **The Claims and Allegations**

Jensen's facts and allegations have been summarized in the court's previous Memorandum and Order (Docket Entry No. 25) and are briefly restated as they relate to the pending motion.   Jensen alleges that he suffers from osteomyelitis, a condition in which the bones and bone marrow become infected and inflamed.   Jensen's ailment was first discovered in his left knee on January 28, 2011, and doctors at UTMB Galveston performed two operations to remove the infected tissue.   After the surgeries, Jensen was discharged from the Galveston hospital and was eventually transferred to the TDCJ Ellis Unit on July 12, 2011.   Jensen states that Dr. Williams first saw him there on either July 14 or 15, 2011.   Jensen alleges that after the examination Dr. Williams told everyone that he was a malingerer and that there was nothing wrong with him.

Jensen alleges that, while at the Ellis Unit, he began suffering from back and rib pain similar to the pain he experienced in his knee.   Jensen complained about the pain to Dr. Williams who ordered x-rays.   Jensen further alleges that the x-rays revealed spinal scoliosis and the examining radiologist recommended immediate medical attention; however, Dr. Williams ignored the recommendations.

Jensen alleges that his condition began to deteriorate and that he filed grievances regarding his housing and need for attention.   Eventually a medical grievance, filed in October of

2011, was found to have merit, and Jensen was taken to the UTMB orthopedic department for further evaluation.  On October 13, 2011, Jensen was told that he would later be given a bone scan and an appointment with the infectious disease clinic.  However, when Jensen saw Dr. Williams again on October 21, 2011, she ignored the UTMB evaluation and gave him a prescription for Motrin, a medication to which he is allergic.

The next day, October 22, 2011, Jensen alleges that he lost all feeling in and control of his legs.  Since that day was on a weekend, Jensen alleges that the superintendent called Dr. Williams at home.  He alleges that the superintendent told him that Dr. Williams believed that he was faking his symptoms and had him placed in solitary confinement without any medical aid until October 24, 2011.  When Dr. Williams returned to the prison on October 24, she diagnosed Jensen with a spinal cord compression and called for emergency medical services.  Jensen was taken to the Conroe Medical Center where neurosurgery was performed on his spinal column; he later learned that despite the surgery, he would remain a paraplegic and face a risk of death if the infection returned.

Jensen claims that Dr. Williams was deliberately indifferent to his serious medical needs and seeks compensatory and punitive damages for his injuries.  He also claims that he filed Step 1 and Step 2 Grievances for each claim raised in this proceeding.

## II. __Williams's Arguments and Supporting Evidence__

Williams contends that Jensen did not properly exhaust his administrative remedies.  Williams asserts that Jensen filed five grievances during the time in question and that some of them have no relevance for the basis of this action.  Williams further argues that Jensen failed to complete the necessary grievance process in each instance.  In support of this argument, she presents the following records:

> **Exhibit A:**    Relevant  portions  of  Jensen's grievance records  with  a  Business  Records  Affidavit. (Docket Entry No. 27-1)

Williams states that Jensen's records show that he filed five Step 1 Grievances between July 18, 2011, and January 9, 2012.  She further states that Jensen did not file any Step 2 Grievances after he filed the Step 1 Grievances.

Jensen's first Step 1 Grievance (#2011197798) was filed on July 18, 2011.  Jensen complained that Dr. Williams denied him the use of a wheel chair (Docket Entry No. 27-1, pp. 11-12).  The grievance was denied because a wheelchair was not medically indicated, and no Step 2 Grievance was filed.  Id.

Jensen's second Step 1 Grievance (#2012019774) was filed on October 4, 2011.  Jensen complained that he was housed on a unit in violation of his medical restrictions and classification (Docket Entry No. 27-1, pp. 9-10).  The grievance was denied as meritless pursuant to a finding that he was housed in an appropriate

-4-

facility, and no Step 2 Grievance was filed.  Id.

Jensen's third Step 1 Grievance (#2012053061) was filed on November 28, 2011.  Jensen complained that Dr. Williams and her assistant had ordered x-rays that revealed porous vertebrae in thoracic and dorsal spine but that Dr. Williams refused to send him to a specialist (Docket Entry No. 27-1, pp. 7-8).  The grievance was denied based on the finding that Jensen was seen and examined. Id.  No Step 2 Grievance was filed.

Jensen's fourth Step 1 Grievance (#20120611632) was filed on December 14, 2011.  Jensen complained that a Ms. Hamm denied him pain medications (Docket Entry No. 27-1, pp. 5-6).  The grievance was denied based on the finding that the records indicated that Ms. Hamm had issued Jensen his medications at the prescribed time.  Id. No Step 2 Grievance was filed.

Jensen's fifth and final Step 1 Grievance (#2012079240) was filed on January 9, 2012.  Jensen complained that he was wrongfully charged $100 for a medical co-payment on a pre-existing condition, namely his back (Docket Entry No. 27-1, pp. 3-4).  He also stated that he was taken to Conroe hospital for the infection in his spine; however, the relief he sought in that grievance was a refund of the $100 withdrawn from his account.  Id. The TDCJ administrator's response indicated that an adjustment had been made to Jensen's account and that Jensen had been assessed a premium for dental services rendered on March 5, 2012, (Docket Entry No. 27-1,

p. 4).   No Step 2 Grievance was filed.   A business records affidavit is attached to the grievances (Docket Entry No. 27-1, p. 2).

### III. <u>Analysis</u>

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When determining whether a fact issue exists, the court views "'the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.'"  <u>In re Kinkade</u>, 707 F.3d 546, 548 (5th Cir. 2013), <u>quoting</u> <u>Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.</u>, 336 F.3d 410, 412 (5th Cir. 2003). In doing so, the court cannot make any credibility determinations or weigh the evidence.   <u>Kevin M. Ehringer Enterprises, Inc. v. McData Services Corp.</u>, 646 F.3d 321, 325 (5th Cir. 2011).

The defendant has the burden of presenting evidence in support of his argument that there is no triable issue regarding Williams's failure to exhaust.  <u>See</u> <u>Stout v. North-Williams</u>, 476 F. App'x 763, 765-766 (5th Cir. 2012); <u>Curtis v. Timberlake</u>, 436 F.3d 709, 711 (7th Cir. 2005).  If the defendant meets this burden, the plaintiff must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  <u>Boudreaux v. Swift</u>

<u>Transp. Co., Inc</u>. 402 F.3d 536, 540 (5th Cir. 2005), <u>quoting</u> <u>Little</u>
<u>v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994).

Before a prisoner can present an action with respect to prison
conditions, he must first exhaust those prison administrative
remedies which are available to him.   42 U.S.C. § 1997e.   This
applies to all aspects of prison life.   <u>Porter v. Nussle</u>,
122 S.Ct. 983, 992 (2002).   The purpose of section 1997e(a) is to
filter out baseless claims and to allow custodial officials to
respond to legitimate complaints without burdening the courts.   <u>Id</u>.
at 988.   <u>See also</u> <u>Woodford v. Ngo</u>, 126 S.Ct. 2378, 2388 (2006).   A
prisoner must complete all steps of the prison administrative
remedy procedures.   <u>Id.</u>, at 2385.   Strict compliance with the
prison's administrative remedy procedures is mandatory, and "mere
substantial compliance" does not satisfy the exhaustion
requirement.   <u>Zebrowski v. United States Federal Bureau of Prisons</u>,
558 F. App'x 355, 359 (5th Cir. 2014), <u>citing</u> <u>Dillon v. Rogers</u>,
596 F.3d 260, 268 (5th Cir. 2010).   A prisoner cannot sidestep the
exhaustion requirement by arguing that the procedures are
inadequate.   <u>Dillon</u>, 596 F.3d at 268; <u>Alexander v. Tippah County,</u>
<u>Miss.</u>, 351 F.3d 626 (5th Cir. 2003).   Nor can he comply with the
exhaustion requirement by filing a grievance or appeal that is
procedurally defective.   <u>Kidd v. Livingston</u>, 463 F. App'x 311, 313
(5th Cir. 2012).

The TDCJ system has a two-step grievance procedure, which must be completed in order to comply with section 1997e. Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999). If an inmate has a complaint, he has 15 days from the date of the alleged infraction to file a Step 1 grievance with the Unit Grievance Investigator. Id. The inmate must then wait up to 40 days to receive a response. If the response is not satisfactory, the inmate must then file a Step 2 grievance within 15 days and wait another 35 days for a response. Id. See also Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004) ("The Step 1 grievance, which must be filed within fifteen days of the complained-of incident, is handled within the prisoner's facility. After an adverse decision at Step 1, the prisoner has ten days to file a Step 2 grievance, which is handled at the state level."). To exhaust, a prisoner must pursue a grievance through both steps in compliance with all procedures. Id., citing Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired. Powe, 177 F.3d at 394.

Williams has presented Jensen's grievance records. There are no Step 2 grievances which refer to Dr. Williams or her alleged deliberate indifference to Jensen's serious medical needs. Moreover, Jensen has not filed a response to Williams's Motion for Summary Judgment. Although a district court may not grant summary

judgment by default simply because there is no opposition to the motion, the court may accept as undisputed the movant's version of the facts and grant a motion for summary judgment when the movant has made a prima facie showing of entitlement to summary judgment. See Jegart v. Roman Catholic Church of Diocese of Houma Thibodaux, 384 F. App'x, 398, 400 (5th Cir. 2010), citing Eversley v. Mbank Dallas, 843 F.2d 172, 174 (5th Cir. 1988).  On the record before it, the court concludes that Williams is entitled to judgment as a matter of law. Woodford, 126 S.Ct. at 2385; Nottingham v. Finsterwald, 582 F. App'x 297, 298 (5th Cir. 2014), citing Dillon, 596 F.3d at 272-273; Patterson v. Stanley, 547 F. App'x 510, 511 (5th Cir. 2013), citing Johnson, 385 F.3d at 515.  Therefore, the defendant's Motion for Summary Judgment will be granted and this action will be dismissed under FED. R. CIV. P. 56.

### III. Conclusion

The court **ORDERS** the following:

1.    The defendant's Motion for Summary Judgment (Docket Entry No. 27) is **GRANTED.**

2.    The civil rights Complaint (Docket Entry No. 1) filed by a TDCJ prisoner is **DISMISSED with prejudice.**  FED. R. CIV. P. 56(c).

**SIGNED** at Houston, Texas, on this 6th day of February, 2015.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-9-